131645 Good morning, Your Honors, and may it please the Court, David Scher for the appellant, Carl Summers. Your Honors, the plaintiff in this case was disabled as a matter of law, because as the District Court found, he alleged properly that he was unable to walk at all for seven to twelve months. We ask the Court to grant Chevron deference to controlling EEOC regulations as mandated by Congress as instated in the legislative record, and hold that impairments that last longer than six months could qualify as disabilities under the Americans with Disabilities Act as amended, and reverse and remand to the District Court. Your Honors, the District Court erred by finding that temporary impairments are categorically excluded under the Americans with Disabilities Act as amended, when in fact, congressional intent, the text of the ADA Amendments Act, and the EEOC regulations that were implemented under the express authority and mandate of Congress say otherwise. Your Honors, prior to the eventual passage of the ADA Amendments Act, Congressmen Hoyer and Sensenbrenner, the founding fathers of the Act, although this came from the Senate, was initiated originally in the House, in a statement of managers regarding the origins of the Act, identified explicitly congressional intent in passing the statute. They said as follows, quote, the duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity. Impairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe. And that is exactly what we wish the Court to find today. As to this case, we argue that Mr. Summers' disability was not for a short period because it exceeded the six months limitation, the only limitation we could find in any regulatory authority. But in any event, his impairment was 100% total. He could not walk at all. To the extent there are any dispute of facts on these points, and there have been those facts argued in the briefs, those disputes are questions for a motion for summary judgment, not a motion to dismiss. The statement of managers by Senator Harkins and Hatch further evidences Congress's clear intent by defining duration for the regarded as prong, but intentionally omitting it for purposes of prongs one and two. The Senator stated that the bill contains an exception that clarifies coverage for individuals under regarded as, stating that when an individual's impairment is both transitory, six months or less, and minor, it would not be covered under the regarded as prong. And the Senator's quote, a similar exception for the first two prongs is individuals with ailments that are minor and short-term. The point is that the court must consider both and not categorically exclude a disability simply because of its duration. Now, Congress had Toyota in mind when it made the changes to the ADA, but it did not explicitly say anything, at least in the statute, with respect to short-term injuries. What are we to in Toyota regarding an impairment's impact, the necessity of it being permanent or long-term? Is that still good law? That is not good law, Your Honor. Toyota was expressly overruled by Congress and Pollard, which, and Halpern, would both expressly rely on Toyota are, by definition of the statute, overruled or superseded by statute as well. With regard to your specific question about the fact that the statute itself does not reference duration, what we're saying here, Your Honor, is that that was intentional, that Congress intentionally stated something about the regarded as prong, putting in a six-month limitation, but did not put it into the underlying statute because it was, as Congress itself stated, it was unnecessary. Furthermore, Congress went on to give the EEOC, in Section 506A, the express authority and mandate to issue regulations. When Congress does so, which it did here, and when the administrative body promulgates regulations pursuant to Section 533 of the Act, which it did, it issued proposed rules, it went through a process of hearing commentary, and then issued final rules. When that happens, those regulations have controlling deference, as long as they are reasonable. Now, I understand that the appellee argues that the interpretations, that there's some analysis of the interpretations to conduct here, but that is not the purview of this court. The Chevron card expressly held that the court is not to assess the wisdom of the EEOC regulations, or the administrative regulations, as long as they provide a reasonable interpretation of the law. We argue that the EEOC's regulations, in this case, are reasonable because they expressly rely on the fact that the regarded as prong has an exclusion for impairments that are less than six months, whereas their statute does not. The district court in this case was concerned, I think his words were something to the effect of, I'm not going to become the first trial court to grant a finding of disability based on a broken leg. So, what, I mean, where do we draw the line, if the line is to be drawn in this case? Well, Your Honor, there are two errors that the district court made in that ruling. First of all, the district court is not, would not be the first district court to hold that temporary impairment is covered. There are several courts that have. In fact, there's one court in Moore versus Jackson, and I can give you the site, that held that a broken ankle was covered, which is certainly far less severe than- The larger question is, first of all, there's a real scarcity of law, I think. When was this, when was the amendment enacted? 2008, Your Honor. And we're five years down the road? Your Honor, it is true. Go to the bigger question. Yes. And the bigger question is- There's two reasons. Yes. Oh, sorry. Yes. The district court erred in stating that, in fact, the district court made two different findings. One, that he had broken both legs, and the other, that he had broken one leg. And the reality is that Mr. Summers could not walk at all. He had injuries in two legs. He had a severe tibia, this is what we allege, in the joint appendix 39 and 40. A severe tibia plateau fracture in his left leg, which means it was broken. His left leg was broken. A meniscus tear to his right knee, a ruptured quadriceps patellar tendon in his right leg. And Mr. Summers is here in the court, am I asking what that meant? And he said it was excruciating pain, ripped his quadricep apart, he could not walk on either leg for up to seven months. So, Judge, the district court's statement that he's not going to find that a broken leg is not covered is inaccurate because it's factually inaccurate. That is not what the complaint alleges. The complaint alleges that he could not walk because he had two legs that were severely injured. In fact, the district court earlier on states that Mr. Summers had two broken legs and that his injury was extremely severe. And that's also in the joint appendix. So . . . Did you or whoever was the trial counsel, did you argue the EEOC regulations to the district court? Yes, Your Honor, we did. How long had they been out? The EEOC regulations were promulgated in 2011. Well, some of them were 2011, some of them were slightly before that, but approximately March of 2011 is when they were finally issued. In terms of timing, Your Honor, Mr. Summers was injured in October 2011 after the regulations were finally promulgated. They had been out for much longer than that, but certainly they were . . . The district court hearing was not long after the promulgation. The district court hearing was . . . 2012. 2012, Your Honor. Well, the third hearing was in 2013, several months ago, but this year. Well, you have a two-count complaint. Count one is wrongful discharge. It talks about the actual disability, the substantial limitations, and you've been arguing that. The trial court addresses that at pages 76 through 78 of the appendix, but you also have a second count which relates to the reasonable accommodation. Yes, Your Honor. That's page 46, particularly paragraph 49. On page 79 of the appendix, the court transitions from its discussion of count one to reasonable accommodation. Yes, Your Honor. It gives, I can tell, three reasons why the reasonable accommodation claim does not merit relief. You have two different rulings, one on count one, one on count two, which is I read the record, but I don't find any argument in your briefs on the reasonable accommodation issue as addressing the trial court's ruling on that point. Your Honor, I think that the parties briefed the issue of reasonable accommodation on appeal, but not the issue of qualified individual initially. That is to say whether he could or cannot perform the essential function of the job. Well, on page 79, the trial court says, as it relates to reasonable accommodation, I don't think the first element's present. Additionally, it fails for two other reasons, accommodation to work indefinitely, and then secondly, in Mason v. Zavia, requested a reasonable accommodation to work from home. So now, where in your briefs do you discuss that portion of the ruling? Your Honor, I'd like to point out that the court also made numerous factual errors with, multiple factual errors with respect to its ruling in that regard as well. Well, that may be so, but I had taken it that you were not appealing that ruling, that you're only appealing the first, the dismissal of the first. That is correct, Your Honor. We did only appeal the first issue. You agree count two is out? Well, Your Honor, we would have agreed to that, except that the appellee argued it in its response brief and raised that issue. They can't resuscitate it if you don't appeal it. Okay, Your Honor. In other words, if it's in, you win, is what you say, but you think you have waived it now. That is correct, Your Honor. Okay, but even with respect to the first count, there's got to be a sufficient allegation that your client was a qualified individual. Yes, Your Honor, that's true. There's a contention by the employer in this case that you abandoned that issue by not adequately briefing it. Well, Your Honor, we did not, the appellant did not abandon that issue because the court never squarely ruled on that issue. To the extent there was any rule on that issue, which we don't think there was, and the issue of whether he could perform the essential functions of the job with or without accommodation. The only statement in the record we could find from the court was, so that, and this is on page 77 of the joint appendix, so that suggests to me that he was capable of working from a computer at home in a wheelchair with two broken legs. My best interpretation of that statement is that Mr. Summers could perform the work with or without accommodation, meaning with accommodation. Now there's a separate issue of whether that accommodation was reasonable, but that's not the point. The point is, was he a qualified individual? Could he perform the essential functions of the job? There is no other ruling in this brief, in the court's decision at all. There is no ruling at all on qualified individual. Therefore, it was not raised below at all, so therefore it could not be waived on appeal. Well, the employer also alleges that to the extent that there is evidence in this record, the evidence includes an admission by you, maybe it wasn't you, I don't know who, I don't remember, okay, that your client was required, in fact, to be physically present in the workplace, and that occurred in the hearing with respect to the earlier version of the complaint. What are we to make of that? Your Honor, first of all, a statement made during oral argument is not an admission or stipulation. Well, it can be. Okay, well, to the extent that it is taken that way, that the statement made was taken completely out of context. The court was asking me the extent to which, it was asking me the distinction between walking and working, and what I stated was that to the extent he had to be at work, he needed to walk around to perform his job. There's a separate issue, which we argued below, that Mr. Summers never specifically stated that he must work from home or from some indefinite period. The complaint expressly alleges that his supervisor told him to go home and stated that they would discuss with him what accommodations were possible. Within days, he emailed his employer multiple times, this is in paragraph 17 through 21 of the complaint, joint appendix 40 and 41, asking and inquiring, the word was inquired about working remotely, not demanding or insisting, but initiating a dialogue. He did that and sent a number of emails thereafter. There was no response from the employer. The next thing that happened is the employer fired him, which is exactly what the Americans with Disabilities Act is designed to prevent against. I do want to— Well, I guess the most direct response is, you're here on a motion to dismiss. Yes, Your Honor. To the extent that there is a dispute of the fact, it sounds like there are a lot of disputes of the fact. Yes, there are, Your Honor. We have to give every nod to what's alleged in the complaint. That's exactly the point, Your Honor. Thank you. I see that amount of time, and I thank you. Not quite, but you can sit down. Yes, now you are. But you have a little bit of time left for rebuttal. Thank you. Thank you, Your Honor. Good morning. May it please the Court, Paul Koganauer on behalf of Altarum, the appellee in this case. Your Honors, we do believe there are two issues, even though only one count now, it's been clarified, is before you. The first is whether, under the Twombly and Iqbal standards, did the plaintiff plead sufficient facts to show a plausible claim of a disability? We submit, and the district court properly answered this, no, he did not. A temporary disability or a temporary impairment, which I would add, is fully expected to heal according to the allegations of the complaint. Or do you? Do you make the argument that if a problem that an employee has is expected to heal, it cannot constitute a basis for this kind of claim? What we're saying is a broken- No, no, no. I'm sorry. I want to hear your explanation for sure, but I'd appreciate a yes or no answer to that. A yes or no as to whether, I think it depends- If it heals, can it not be a basis for a discrimination claim under this statute? If it's temporary, my answer is no. So everything that heals is temporary, right? Is that what you're saying to me? I'm asking you, if something heals, is it not a basis? Because that seemed to be what you were saying, that this is going to heal, and therefore it can't be a basis for a discrimination claim. Your Honor, I think in this, all I can say is in this case, this broken leg, I'm not- I'm trying to understand you. I understand. You're writing the law for not just this case- I know that. But for the future, and that's why I'm asking you what your position is. Well, I think I would have to say that no, it could not be a disability. Uh-huh. Okay. Under any circumstance. If it heals, no disability. All I- That's fine. It's tough to answer the question when phrased by that, because I haven't thought about any- I do know that Congress- You've never thought about that question? Well, no. About all the different kinds of conditions, we're dealing with a very discreet one, a broken leg. To me, a very rare instance of not healing. Thank you, Your Honor. Okay. To me, a broken leg, by definition, is a condition that is expected to heal. And it was addressed in Halperin, and addressed again in this court's- So if it's expected to heal, then it's not a disability? I don't think it constitutes the type of impairment that the court- excuse me, Congress intended to be covered by the ADA. What do you make of the EEOC regulation that suggests otherwise? Well, I think, to the extent, if they did suggest otherwise, they got it wrong. And I do, on that issue, want to draw this court's attention to what I think is critical language plaintiff has omitted from the statement of Hoyer and Sensenbrenner. And here's what they said right before what the plaintiff has quoted to you. A concern has been raised about whether the bill changes current law with respect to the duration that is required for an impairment to substantially limit a major life activity. The bill makes no change to current law with respect to this issue. So plaintiff has said to this court, this is controlling. This is what you should look at. These are the two chief sponsors of this law. And they said no change was intended by the amendments to the durational aspect, which means Pollard and Halperin are good law in this circuit. There is no reason to change those rulings. Well, is the EESC regulation that says it can be less, under this section of the statute, can be less than six months' duration, it can be a disability, depending on the circumstances, is that an ultra-virus regulation? I think it is, given what I just read and given the fact that Congress's change to the statute said absolutely nothing, as Judge Diaz mentioned before, about this issue. But let me just posit this. Suppose that when Congress said that, it thought that disabilities that were of a shorter duration always qualified, and therefore there was no change in the law because courts had been interpreting incorrectly. It doesn't have to go through every appellate court's judgment and say, we're throwing all these out. And then they did tell God and everyone, including you and me and the EEOC, to interpret this more broadly than it had been. And in response to that, the EEOC instituted the regulations that Judge Agee's been asking you about. Yes. And you say they're ultra-virus. Even though they are carrying out Congress's intent that we should look upon these claims more favorably, not have such a cramped reading. Well, but for certain conditions. And that's what goes back to your earlier question. And they said what those were. Epilepsy, AIDS, multiple sclerosis, cancer. Conditions that the courts, they felt, were getting it wrong. They never said anything about temporary impairments. There's nothing in the statute, though, that limits the consideration. Well, maybe there is, and you can tell us what it is. That limits the consideration, either by the Congress or the EEOC, to the enumerated conditions that you're listing. I think that's correct. I think that's correct. But I was talking about the congressional intent, as the Kohler case talked about it. And I think Senator Wilson talked about it. The best indication of congressional intent, the Supreme Court tells us, is the statute itself. I agree completely. And the statute says nothing about the temporary conditions should be considered. And there's nothing in the statute, as Judge Aiken has said, that limits it. It says that it doesn't. That's true. And I suppose, in that sense, the court faces a dilemma. But I think we're talking about a very thin reed to overturn established precedent. The plaintiffs have suggested you should infer from this that that is what Congress intended. I don't think that that's a fair implication. You're familiar with the Chevron doctrine? Yes. So we don't just have that fragile reed? Well, but it has to be a reasonable interpretation. And you have to demonstrate it's not reasonable. Well, although, as you said earlier, if the statutory construction is clear, and I think it is- Statutory language is clear. I'm sorry. Statutory language is clear. Then you don't need to go there. And as- So if the statute said no, this doesn't apply to anything that can be cured, anything that's temporary, then the EEOC could not institute this regulation. But we've all established the statute doesn't say that. Well, understood. But as this court said in the U.S. Chamber of Commerce, when Congress amended this statute, and by not saying it applies to temporary conditions, that should be an indication that it did not intend to have it applied to temporary impairments. The U.S. Chamber of Commerce- Suggesting that there is a decision of this court under the amended statute? It says that- No, I'm sorry, Your Honor. No, I was- As we cited- No, no, no, I- I would be really interested- No, I was using by analogy the holding from the U.S. Chamber of Commerce case as we cited in our brief. I'm not saying it was decided under the statute. I don't think there's a holding from any certain court of appeals yet. I think that's a good point, Your Honor. I know the plaintiff in his reply brief did cite some district court cases as we had cited to this court, and they do go both ways. I will say that. Neither one of you has asked the EEOC for their views on this. I have not. But there is a second issue that I think also goes to the dismissal and substantiates and should uphold the dismissal. And that is whether or not, as Judge Diaz mentioned, this is a qualified individual under the ADA. You have to be both. You have to have a disability, but you have to be a qualified individual with a disability. And we did not characterize our motion below as a motion to strike or for dismissal of count one and two. We had one argument that the plaintiff was not a qualified individual with a disability. Then we said, A, he has no disability. And B, he cannot perform the essential functions of his job. And that was addressed below. Of course, with or without a reasonable accommodation. And plaintiff and his counsel clearly stipulated or asserted on the record that an essential function of his job was to be at work. And that was his job. He wasn't working for Altarum directly. OK, so you're not relying on the complaint. You're relying on this admission by counsel in this earlier proceeding. I do rely on both. And as far as the complaint goes, the complaint says he was, as I was about to say, assigned to work for the Defense Centers of Excellence. In other words, he wasn't working directly at Altarum. His job was to go there to work for them, to fill assignments on the defense centers. And paragraph 10 of the complaint says that his supervisor generally preferred that contractors work at the offices. But that doesn't sound like an absolute to me. Well, but it says during the normal work day and approval for special projects. So they did permit contractors to bring their computers home and work remotely. And he gives an example. But that doesn't seem to me to be all inclusive. And as Judge Motz pointed out, we're at the 12B6 stage where we give every indulgence to the best reading of the complaint for the plaintiff. Well, understood. It does say when putting an extra time on the project. It does not, you're right, specifically say that's the only example. I don't actually understand why you're even making this. It seems to me that if things are as you say, you have a pretty good summary judgment motion. But instead, we're up here on a complaint. And a complaint that I think you want us to make some findings about. Well, I don't dispute the facts. I think you can accept that fact. But the very next paragraph says the client had to approve. And there's no allegation our client approved him to work at home on a temporary or full-time basis. But he doesn't have to say that in a complaint. Well, but the background is that the law- You're saying the client didn't. You've put in a dispute, it's a fact. The client didn't approve. No, I'm just saying he has not alleged that it was approved. Okay. And this court's law has long said, and other court's law has long said, it's pretty much an essential function of every job to be able to go to the job, to be able to show up to work. And if I might, I do think it's something- But you could solve, as Judge Motz indicated, one deposition from the D.C., whatever this is, D.C.E. that says we always require our contractors to be physically present at work. It's a condition of employment. We don't give any exceptions for it. It was required in this case. There have never been any deviations. They have to be at work because 1, 2, 3, 4. And I may end the case right there. Understood, Your Honor. The only point I'd like to ask this court to consider on that is that we're talking about both a temporary impairment that is fully expected to heal within a number of months and a request to work at home. And on both ends, the court has spoken on both ends that it is generally an essential function of the job to be at work. And when you take those two together, doesn't that expand this act far beyond even what the Congress suggested? We're now saying tens of millions, potentially additional people, not people with MS or epilepsy or AIDS, but people with broken bones can now benefit from the act and work at home while they're doing it. I don't think Congress intended that when you put it all together. I don't think there's any fair reading of the amendments or the process that led to that, that suggests that that should be the result here. I think that the court should apply its past precedent, should not be the first court to declare that permanent or long-term is no longer a part of the meaning of disability, and instead adhere to both Halperin and Pollard and adhere to the precedents. And I think this court said in Wilson just earlier this year, basically to the same effect, that, excuse me, if plaintiff cannot identify or does not identify a reasonable accommodation, that will allow him to perform the essential functions of the job, then the case fails for that reason, for not being a qualified individual with a disability. Whether or not the interactive process met the plaintiff's goal, it doesn't matter if there's not such a accommodation available. And I do rely both on the complaint, but also plaintiff counsel's admissions, that he could not even get to work for months. And again, the Defense Centers of Excellence was the assigned job, and they had a right to have somebody fill that job. And we, El Tarum, had a right to assign somebody when the plaintiff, as even counsel acknowledged, could not perform that job except at home. And again, in our view, that is not a reasonable accommodation that this court should open the door to. I think we understand your argument. All right. Thank you very much. Chair, do you have any rebuttal? Yes, very briefly. Thank you, Your Honor. I'll keep my comments very brief. First of all, Your Honors, my colleague's suggestion that if a impairment is expected to heal at some point in the future, that it could not be covered, highlights the point that temporary disabilities are covered under the statute as amended. If Mr. Summers was in a wheelchair for four years, stated in his complaint that he was going to be in a wheelchair and could not walk for four years, I don't think this would be the first court in the country to hold that an individual in a wheelchair for four years is not disabled. We're going to be the first appellate court in the country. That is my next point, Your Honor. This is important law that this circuit is making and is the only circuit, the first circuit to rule on the issue of the coverage of temporary impairments. That's why I think it is very important for this court to recognize that Congress, in fact, was expressly overruling precedent and expressly stating that this court should not rely on prior precedent in Toyota and Pollard and Halpern, which expressly use overturned and outdated regulations and rely expressly on Toyota, that those are no longer good law. This court is now charged with the task of determining what Congress meant in the statute that it promulgated and expressly gave the EEOC the obligation to promulgate regulations that were clearly reasonable. The EEOC in its regulation state that a six-month durational requirement will represent a more stringent standard than the EEOC had previously required, not the lower standard Congress sought to bring about through the enactment of the ADA Amendments Act. Therefore, the commission declines to provide for even a six-month durational minimum under the first prong. Additionally, the commission has not, in its final regulation, specified any specific minimum duration. We're asking this court only to hold that, in this case, Mr. Summers, who's alleged that he was disabled for seven months to 12 months, more than six months, is certainly covered under the statute. And the final point I wanted to make, Your Honor, with regard to qualified individual. We argue that that issue was never decided below. To the extent it was, it was not waived. To the extent this court holds it was waived, there's significant authority that once the appellee raises the issue, it is now before this court. And as this court has enunciated already, and I'm not going to rehash the issue, the questions that my colleague raises are questions for a motion for summary judgment. Those issues are simply not right for this court to review. They're questions of fact to be decided after a trial  Thank you very much. Thank you, Your Honor. We will come down and say hello to the lawyers and then go to our last case.
judges: Diana Gribbon Motz, G. Steven Agee, Albert Diaz